UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**UNITED STATES OF AMERICA**

v.                                               Criminal No. 2:90cr117

**MARK KERRY CRENSHAW,**

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Mark Kerry Crenshaw's ("Defendant") motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed with the assistance of counsel. ECF No. 23. Defendant contends that recent statutory changes to 18 U.S.C. § 924(c) present extraordinary and compelling reasons to justify a reduction in his sentence to "time served." The Government filed a brief in opposition, ECF No. 30, and Defendant filed a reply, ECF No. 32. In response to an Order from the Court requesting supplemental briefing, Defendant filed a supplement, ECF No. 37, and the Government elected not to respond. Because Defendant does not present extraordinary and compelling reasons for relief, Defendant's motion is **DENIED**.[1]

---

[1] Defendant's motion also includes a request for a hearing. ECF No. 24, at 7. After examining the briefs and the record, the Court finds that a hearing is unnecessary because the facts and legal arguments are adequately presented, and oral argument would not significantly aid the decisional process. See E.D. Va. Loc. Crim. R. 47(J).

# I. BACKGROUND

## A. Virginia Bank Robberies

During a two-week period in January and February 1990, Defendant, then 22 years old, robbed six banks in the Hampton Roads area. ECF No. 5 ¶¶ 6-12. To accomplish the robberies, Defendant presented a bank teller with a note that demanded money and threatened lethal force if the teller failed to comply. Id. During at least three of these robberies, Defendant brandished a firearm. Id. ¶¶ 10-12. In total, Defendant stole $10,376.00. Id. ¶ 13.

In October 1990, a grand jury returned an indictment charging Defendant with two counts of bank robbery, in violation of 18 U.S.C. § 2113(a); four counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d); and four counts of using a firearm in the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1). Id. ¶ 1. Following a two-day trial, a jury convicted Defendant of all ten counts. ECF No. 1, at 1.

In April 1991, the Court sentenced Defendant to a term of imprisonment of 900 months (75 years) consisting of 120 months on each of the robbery counts, to be served concurrently; 60 months on one of the § 924(c) counts, to be served consecutively to the sentence imposed for the robbery counts; and 240 months on each of the remaining three § 924(c) counts, to be served consecutively to

each other and to all other counts.[2] Id. at 3. Defendant appealed his convictions, challenging the sufficiency of the evidence underlying two of his robbery convictions, but the Fourth Circuit found that there was ample evidence against Defendant and affirmed his convictions. United States v. Crenshaw, No. 91-5292, 972 F.2d 342, 1992 WL 180140 (4th Cir. July 29, 1992) (unpublished table opinion). In 1997, the Court vacated one of the § 924(c) counts upon a motion filed by the Government, reducing Defendant's total sentence to 660 months (55 years). ECF No. 1, at 6.

### B. Indiana Bank Robberies

Although sentenced by this Court in 1991, Defendant did not begin serving his federal term of imprisonment until 2010. ECF No. 24, at 10. During this intervening period of approximately 20 years, Defendant was serving a term of imprisonment in Indiana state prison for unrelated robberies committed in Indiana. After Defendant committed the Virginia bank robberies, but before he was indicted, Defendant was arrested and charged in Indiana state court with eight counts of armed robbery. ECF No. 5 ¶ 29. After the state court denied Defendant's bail application during a May 1990 bail hearing, Defendant grabbed a court reporter and placed a sharpened spoon against her throat. Id. ¶ 30; ECF No. 24, at 9.

---

[2] As noted below, at the time of Defendant's conviction and sentencing, the mandatory minimum sentence for a second or subsequent § 924(c) conviction was 20 years. 18 U.S.C. § 924(c)(1) (1988). Under the current version of the statute, the mandatory minimum for a second or subsequent § 924(c) conviction is 25 years. 18 U.S.C. § 924(c)(1)(C).

3

Deputy sheriffs successfully subdued Defendant without harm to the court reporter. ECF No. 5 ¶ 30. As a result of the incident, Defendant was charged with kidnapping. Id.

In July 1990, a state court jury convicted Defendant of one of the eight armed robbery counts,[3] and Defendant received a sentence of 13 years' imprisonment. Id. ¶ 29. In August 1990, Defendant pled guilty to an <u>entirely separate</u> 1990 charge of robbery with a deadly weapon (arising out of a different Indiana municipal jurisdiction) and was also convicted of the above-referenced kidnapping charge.[4] Id. ¶¶ 28, 30. Defendant received a 10-year sentence on the robbery charge and a 33-year sentence on the kidnapping charge, both to be served concurrently with the 13-year armed robbery sentence. Id. ¶¶ 28-30. Each of these state sentences is referenced in the Presentence Investigation Report considered by this Court at the time of Defendant's April 1991 sentencing hearing for his federal offenses. Id.

### C. Defendant's Time Incarcerated

Defendant completed his Indiana state prison term in 2010, after which he was transferred to the custody of the federal Bureau of Prisons ("BOP") to begin serving the consecutive 55-year federal sentence imposed by this Court. Defendant, now 54 years old,

---

[3] The other seven armed robbery counts "were separated for [the] purpose of trial and [were never] refiled." ECF No. 5 ¶ 29.

[4] The record before this Court is unclear as to whether the kidnapping conviction resulted from a guilty plea or a jury verdict.

4

reports that he is housed at USP Florence - High, with a projected release date of January 21, 2058. ECF No. 24, at 10; ECF No. 30, at 2.

Last year, Defendant filed the instant motion for compassionate release, contending that, due to the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, the aggregate mandatory minimum sentence he received on the § 924(c) counts is 30 years greater than the aggregate mandatory minimum sentence that he would face today. See ECF No. 24, at 16. Pursuant to the Fourth Circuit's decision in United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), Defendant argues that this sentence disparity constitutes an extraordinary and compelling basis for a sentence reduction to a term of "time served." ECF No. 24, at 7.

The Government does not dispute Defendant's claim that he would face a drastically lower aggregate mandatory minimum sentence on the § 924(c) counts if he were sentenced today. But the Government stresses that § 3582(c)(1)(A) relief is reserved for only the "truly exceptional case," and given Defendant's "history of violent recidivism," the Government argues that this is not that case. ECF No. 30, at 3 (quoting McCoy, 981 F.3d at 288) (internal quotation marks omitted).

## II. LEGAL STANDARD

As part of its broad changes to federal criminal sentencing, the First Step Act of 2018 amended the statute governing

5

compassionate release, 18 U.S.C. § 3582(c)(1)(A), to give defendants the ability to file motions for sentence modifications "on their own behalf, so long as they first apply to the BOP." McCoy, 981 F.3d at 276 (4th Cir. 2020). Once a defendant completes that requirement—known as administrative exhaustion—a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). To determine what constitutes an "extraordinary and compelling circumstance," a court ordinarily must consider the "applicable policy statements issued by the United States Sentencing Commission." Id. § 3582(c)(1)(A). However, because the Fourth Circuit has held that there is no applicable policy statement as of yet that governs compassionate release motions filed by defendants, district courts in this circuit must "make their own independent determinations" about what constitutes an extraordinary and compelling circumstance for relief under § 3582(c)(1)(A). McCoy, 981 F.3d at 284.

If a district court concludes that extraordinary and compelling circumstances are present, it must then look to the sentencing factors in 18 U.S.C. § 3553(a) to determine how much of a reduction (if any) is appropriate. 18 U.S.C. § 3582(c)(1)(A). Those factors include:

> (1) [the] offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely, (a) just punishment (retribution),

6

> (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

Rita v. United States, 551 U.S. 338, 347-48 (2007) (internal quotation marks omitted).

### III. DISCUSSION

The Government concedes that Defendant has exhausted administrative remedies with the BOP. ECF No. 31. Thus, the Court must decide whether Defendant has presented "extraordinary and compelling circumstances" for relief. Defendant contends that the First Step Act's changes to § 924(c) constitute an extraordinary and compelling reason for compassionate release.

Section 924(c) prohibits (among other things) the use of a firearm during and in relation to a crime of violence. The statute imposes mandatory minimum sentences of varying lengths depending on the severity of the offense: 5 years consecutive for possessing a firearm, 7 years consecutive for brandishing a firearm, 10 years consecutive for discharging a firearm, and 25 years consecutive for committing a second or subsequent § 924(c) offense. 18 U.S.C. § 924(c)(1)(A), (C). Before Congress passed the First Step Act, a conviction could trigger the 25-year mandatory minimum for second or subsequent offenses even if a defendant's first § 924(c) conviction was obtained in the same case. See Deal v. United States, 508 U.S. 129, 132 (1993). This is precisely what happened

7

in Defendant's case (except that at the time of Defendant's sentencing in 1991, the "second or subsequent" mandatory minimum was 20 years rather than 25 years).[5] See 18 U.S.C. § 924(c)(1) (1988). Indeed, despite being a first-time § 924(c) offender, Defendant was subject to a mandatory minimum of five years consecutive on his first § 924(c) count and 20 years consecutive on each of his two additional § 924(c) counts—for a total of 45 years' imprisonment on his § 924(c) counts alone.

Following the passage of the First Step Act, the enhanced mandatory minimum for a second or subsequent § 924(c) conviction applies only if the first § 924(c) conviction was "final" at the time of the subsequent violation. First Step Act § 403(a); McCoy, 981 F.3d at 275. Therefore, if Defendant were sentenced for the same federal offenses today, he would be subject to an aggregate minimum sentence of 15-21 years on the § 924(c) counts.[6] But because the First Step Act's revision of § 924(c)(1)(C) does not apply to sentences imposed before the First Step Act's enactment,

---

[5] Congress increased the mandatory minimum for second or subsequent § 924(c) offenses to 25 years in 1998. Act of Nov. 13, 1998, Pub. L. No. 105-386, 112 Stat. 3469.

[6] At the time of Defendant's conviction, § 924(c) did not impose a higher mandatory minimum if a defendant brandished a firearm or discharged a firearm; it imposed a five-year mandatory minimum on any use of a firearm during a crime of violence. See 18 U.S.C. § 924(c)(1) (1988). However, at least two of Defendant's § 924(c) convictions are specifically tied to armed robberies where Defendant brandished a firearm. See ECF No. 5 ¶¶ 1, 10, 11. Thus, were Defendant sentenced today, it is likely that at least two (and possibly all three) of his § 924(c) convictions would trigger the seven-year mandatory minimum for brandishing a firearm.

First Step Act § 403(b); <u>United States v. Jordan</u>, 952 F.3d 160, 174 (4th Cir. 2020), Defendant's 1991 aggregate mandatory minimum sentence of 45 years on the § 924(c) counts remains the proper sentence required by law.

That fact, however, does not doom Defendant's compassionate release motion. In <u>McCoy</u>, the Fourth Circuit held that, when considering motions for compassionate release filed by defendants under 18 U.S.C. § 3582(c)(1)(A), district courts may consider any extraordinary and compelling reason for release that a defendant might raise, including sentencing disparities resulting from the First Step Act's non-retroactive modification of § 924(c)(1)(C). 981 F.3d at 284-86.

But as the Government correctly points out, <u>McCoy</u>'s holding merely established that courts may appropriately consider the disparity of a pre-First-Step-Act defendant's sentence as a factor in the compassionate release analysis; it did not confer an absolute right to relief. See <u>McCoy</u>, 981 F.3d at 285-86; <u>see also</u> <u>United States v. Guess</u>, No. 2:10cr140, 2021 WL 6049455, at *3 (E.D. Va. Dec. 21, 2021) ("[A] disparity due to § 924(c) stacking is not <u>categorically</u> an extraordinary and compelling reason for a sentence reduction."). As the Fourth Circuit noted, "not <u>all</u> defendants convicted under § 924(c) should receive new sentences"; rather, "individual relief" is appropriate "in the most grievous cases." <u>McCoy</u>, 981 F.3d at 286-87; <u>see also</u> <u>United States v.</u>

9

Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va. 2021) ("Nothing in McCoy . . . requires the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing."). Ultimately, a court's decision to grant or deny a § 3582(c)(1)(A) motion must be based on a "full consideration of [a defendant's] individual circumstances." McCoy, 981 F.3d at 286 (emphasis added).

In McCoy, the Fourth Circuit highlighted several factors when it affirmed the compassionate release of four defendants: (1) the defendants' "relative youth" (between 19 and 24 years old) when the offenses were committed, (2) their lack of criminal history, (3) the time they already served (from 17 to 25 years), (4) the fact that § 924(c)'s mandatory minimums were the "lion's share" of their terms of imprisonment, and (5) their post-sentencing rehabilitation. 981 F.3d at 277-79, 286. Although such factors are not prerequisites, id. at 284 (holding that a district court can consider any extraordinary and compelling reason that a defendant raises), they provide helpful guidance when evaluating a defendant's stacked § 924(c) sentences.

For his part, Defendant has several factors that weigh in his favor. During his time in federal custody, Defendant earned his GED, refrained from drugs, and logged more than 1,200 hours in BOP programming. ECF No. 24, at 19. Defendant was also relatively

10

young (22 years old) when he committed his federal offenses, and the "lion's share" of his 660-month sentence (82%) is based on his § 924(c) convictions. Furthermore, Defendant's 45-year consecutive sentence exemplifies both the "sheer and unusual length" of § 924(c) sentences before the First Step Act was passed and the "gross disparity" between those sentences and sentences imposed today. McCoy, 981 F.3d at 285. Indeed, as noted above, if Defendant were sentenced today, he would likely face a mandatory minimum of 15-21 years on his three § 924(c) counts, which is 24-30 years less than what he actually received.

However, Defendant has a number of factors that counsel against finding that extraordinary and compelling circumstances warrant relief at this time. First, unlike the defendants in McCoy, Defendant had a significant criminal history at the time of his conviction here. Before his conviction in the instant case, Defendant was convicted three separate times for armed robbery over a span of seven years. ECF No. 5 ¶¶ 27-29. Defendant was also convicted for kidnapping after he grabbed a court reporter and held a sharpened spoon to her throat because he was denied bail. Id. ¶ 30. Defendant's conduct in the instant case was likewise heinous as he committed six bank robberies, several of which involved threats to kill if he did not receive the money, and at least three of which occurred while armed. Id. ¶¶ 6-12.

11

Second, while Defendant alleges that he has "spent his time in prison devoting himself to rehabilitation and self-improvement," ECF No. 32, at 7, the record before the Court presents a different picture. During his 20 years in state custody, Defendant had a litany of disciplinary violations, including assaulting another inmate, using controlled substances,[7] assaulting a prison employee, and starting a riot (which involved putting a prison guard in a headlock and dragging him across the floor). See ECF No. 37-1, at 12, 60, 142, 155, 165, 262, 515. While in federal custody, Defendant has accrued four serious disciplinary violations in the span of 11 years: he fought another inmate on one occasion, and he was caught hiding a knife or sharpened weapon on three separate occasions (which is particularly concerning given his dangerous history with such objects). ECF No. 30-1. Though Defendant's last disciplinary violation occurred in 2016, his consistent history of serious infractions involving violence or weapon possession from his 20s through his late-40s undercuts his argument that his age (54) should assuage concerns about his potential for recidivism. Indeed, Defendant's brief indicates that he is incarcerated in a high security prison. See ECF No. 24, at 10.

---

[7] Though Defendant claims that he has "refrained from drug use during the past three decades," ECF No. 24, at 19, the record shows that Defendant tested positive for controlled substances multiple times while in state custody, including as late as 2010. See ECF No. 37-1, at 60, 515.

Finally, unlike the McCoy defendants, Defendant has only served 11 years of his 55-year federal sentence. Although Defendant served 20 years of imprisonment for his state robbery convictions in addition to the 11 years served so far on his federal sentence, Defendant's state convictions were based on unrelated offenses committed in a different state than his federal offenses. What is more, the sentencing judge in this case was fully aware of Defendant's 33-year state sentence, yet he still ordered that Defendant's federal sentence run consecutive to his 33-year state sentence. That Defendant has, after 20 years, fully discharged such state sentence is not truly a "new" development in this case, but rather an eventuality anticipated by the sentencing judge.

After carefully considering the factors in McCoy and all of the arguments in the briefs, the Court finds that extraordinary and compelling circumstances are not present at this time. The Court commends Defendant for his rehabilitative efforts during his time in federal custody and encourages him to continue participating in BOP programming. At this stage, however, Defendant's extensive criminal history, violent disciplinary record while incarcerated, and limited time served for his federal offenses militate against finding that he has cleared the "exceptionally high standard" for compassionate release. McCoy, 981 F.3d at 288

## IV. CONCLUSION

Because Defendant has not demonstrated extraordinary and compelling circumstances warranting relief, Defendant's compassionate release motion is **DENIED**. ECF No. 23.

The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to counsel for Defendant and counsel of record for the Government.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 7, 2022