UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 2:90cr117

MARK KERRY CRENSHAW,

       Defendant.

<u>OPINION AND ORDER</u>

This matter is before the Court on Defendant Mark Kerry Crenshaw's ("Defendant") second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 45. The Government filed a brief opposing Defendant's motion on the merits, ECF No. 50, and Defendant filed a reply brief, ECF No. 51. For the reasons discussed below, Defendant's motion for compassionate release is **GRANTED** in part.

### I. BACKGROUND

#### A. Virginia Robberies

During a two-week period in January and February 1990, Defendant, then 22 years old, robbed six banks in the Hampton Roads area. ECF No. 5, at 4-7. To accomplish each robbery, Defendant presented a bank teller with a note that demanded money and threatened lethal force if the teller failed to comply. <u>Id.</u> During at least three of these robberies, Defendant brandished a

firearm.   Id. at 5-6.   In total, Defendant stole $10,376 from Hampton Roads area banks.   Id. at 6.

In October 1990, a grand jury returned an indictment charging Defendant with: two counts of bank robbery in violation of 18 U.S.C. § 2113(a); four counts of armed bank robbery in violation of 18 U.S.C. § 2113(d); and four counts of using a firearm in the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1).   Id. at 3.   At the conclusion of a two-day trial, a jury convicted Defendant of all ten counts.   ECF No. 1, at 1.

In April 1991, another judge of this Court sentenced Defendant to a term of imprisonment of 900 months (75 years) consisting of: 120 months on each of the robbery counts, to be served concurrently; 60 months on one of the § 924(c) counts, to be served consecutively to the sentence imposed on the robbery counts; and 240 months on each of the remaining three § 924(c) counts, to be served consecutively to each other and to all other counts.   Id. at 3.   The sentencing scheme that was in place when Defendant was sentenced was mandatory, meaning that judges were generally bound by the ranges set forth in the Sentencing Guidelines.   United States v. Booker, 543 U.S. 220, 245 (2005).   Defendant was sentenced at the lowest end of the Guidelines range applicable to his § 2113 charges, and the lowest end of the statutory range applicable to his § 924(c) firearm charges.   ECF No. 5, at 16.

2

Defendant appealed his conviction, challenging the sufficiency of the evidence underlying his robbery convictions, but the Fourth Circuit found that there was ample evidence supporting guilt and affirmed his convictions. United States v. Crenshaw, 972 F.2d 342, 1992 WL 180140, at *2 (4th Cir. July 29, 1992) (unpublished table opinion). In 1997, another judge of this Court vacated one of Defendant's § 924(c) convictions based on the Government's motion acknowledging that the trial evidence was insufficient to establish that Defendant possessed a firearm during the bank robbery underlying that charge. Based on such ruling, Defendant's sentence was reduced to 660 months (55 years). ECF No. 1, at 6.

### B. Indiana Robberies and Kidnapping

Although sentenced by this Court in 1991, Defendant did not begin serving his federal term of imprisonment until approximately 2010. ECF No. 24, at 10. During the intervening period, Defendant was serving a term of imprisonment in Indiana state prison for unrelated crimes he committed in Indiana. ECF No. 1, at 6; ECF No. 5, at 9. After Defendant committed the Virginia bank robberies, but before he was federally indicted, Defendant was arrested and charged in Indiana state court with multiple counts of armed robbery. Id. These robberies were committed within a week or two of the Virginia bank robberies. After the Indiana state court denied Defendant's bail application during a May 1990

3

hearing, Defendant grabbed a court reporter and placed a sharpened spoon against her throat. Id. at 9-10; ECF No. 24, at 9. Deputy sheriffs successfully subdued Defendant without harm to the court reporter. ECF No. 5, at 9-10. As a result of this incident, Defendant was charged with kidnapping. Id.

In July 1990, an Indiana jury convicted Defendant of one armed robbery count, and Defendant received a sentence of 13 years' imprisonment. Id. at 9. In August 1990, Defendant pled guilty in Indiana to a separate 1990 charge of robbery with a deadly weapon (arising out of a different municipal jurisdiction) and was also convicted of the above-referenced kidnapping charge.[1] Id. at 9-10. Defendant received a 10-year sentence on that robbery charge and a 33-year sentence on the kidnapping charge, to be served concurrently with each other and with the 13-year armed robbery sentence. Id.

### C. First Step Act

At the time this Court sentenced Defendant in 1991, § 924(c) stated that whoever used a firearm during or in relation to a crime of violence would be sentenced to a term of 5 years' imprisonment on the first count, and 20 years' imprisonment on any second or subsequent counts. This iteration of the statute did not impose different sentences based on whether a defendant carried,

---

[1] The record before this Court is unclear as to whether the kidnapping conviction resulted from a guilty plea or a jury verdict.

brandished, or discharged a weapon; all had identical sentence lengths under § 924(c). Id. The statute did, however, permit "stacking," meaning that the enhanced 20-year recidivist punishment for second and subsequent § 924(c) convictions was applicable within a single federal prosecution. United States v. Dire, No. 2:10cr56, 2024 WL 4259871, at *3 (E.D. Va. Sept. 20, 2024). This meant that individuals with no prior criminal record who committed multiple § 924(c) offenses before they were apprehended received mandatory minimum sentences of 25 years, 45 years, or longer, the first time they were prosecuted in federal court. In other words, youthful individuals without an opportunity to rehabilitate while incarcerated were treated the same as a true recidivist who committed a second or subsequent § 924(c) offense after completing their prison sentence on their first federal armed robbery prosecution.

In 2018, Congress passed the First Step Act which eliminated the practice of "stacking" § 924(c) convictions. Dire, 2024 WL 4259871 at *3. The second and subsequent conviction provision now only applies when a defendant has a prior final § 924(c) conviction at the time they commit another § 924(c) offense.[2] Id. The current version of § 924(c) also differentiates between the mandatory minimum sentences on a defendant's § 924(c) counts in their first

---

[2] Under the current version of the statute, the mandatory minimum for § 924(c) offenses that meet the recently amended definition of a second or subsequent conviction is 25 years. 18 U.S.C. § 924(c)(1)(C) (2018).

federal prosecution under this section.   The difference is based on whether the defendant carried the firearm (5 years), brandished the firearm (7 years), or discharged the firearm (10 years).   Id.

### D. Defendant's Prior Motion for Compassionate Release

In May of 2021, Defendant filed a motion for compassionate release in this Court contending that, due to changes in the First Step Act of 2018, the aggregate mandatory minimum sentence he received on his three remaining § 924(c) counts is 30 years longer than the aggregate mandatory minimum sentence that he would face today.  See ECF No. 24, at 16.  Applying the compassionate release framework in force at that time, this Court denied that motion. United States v. Crenshaw, No. 2:90cr117, 2022 WL 1046371, at *3, *5 (E.D. Va. Apr. 7, 2022).

Defendant is currently 57 years old, is serving his sentence at USP Coleman, and has a projected release date of January 21, 2058.   BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Feb. 24, 2025).   Defendant filed the instant motion for compassionate release in July of 2024, ECF No. 45, and his last submission was received in October of 2024, ECF No. 52.

## II. LEGAL STANDARD

A sentencing court generally lacks the authority to "modify a term of imprisonment once it has been imposed." United States v. Davis, 99 F.4th 647, 653 (4th Cir. 2024) (quoting 18 U.S.C. § 3582(c)).   The compassionate release statute is a limited

exception to this default position, providing the Court with discretionary authority to reduce a federal inmate's sentence if "extraordinary and compelling reasons warrant such a reduction." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A) does not define "extraordinary and compelling," but relies instead on a cross-reference to "policy statements" issued by the United States Sentencing Commission. See United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021). In 2023, the Sentencing Commission issued an amended policy statement setting forth a non-exhaustive list of circumstances which may individually or in combination create extraordinary and compelling reasons for a sentence reduction. See U.S.S.G. § 1B1.13. In certain circumstances, unusually long sentences can qualify as an extraordinary and compelling reason to justify a sentence reduction, as can "other reasons." Id. The pertinent part of the Guideline policy statement provides:

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> (b) Extraordinary and Compelling Reasons.— Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) Medical Circumstances of the Defendant . . .
>
> (2) Age of the Defendant . . .
>
> (3) Family Circumstances of the Defendant . . .
>
> (4) Victim of Abuse [while in custody] . . .

7

(5) <u>Other Reasons</u> — The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) <u>Unusually Long Sentence</u> — If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b).[3]

Unlike the other factors listed in § 1B1.13(b) that can constitute an extraordinary and compelling reason for a sentence reduction, rehabilitation "is not, by itself, an extraordinary and compelling reason for purposes of th[e] policy statement." U.S.S.G. § 1B1.13(d). However, rehabilitation "may be <u>considered in combination with other circumstances</u> in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." <u>Id.</u> (emphasis added).

---

[3] This new standard was not in force when Defendant filed his first compassionate release motion in 2021. The Sentencing Guidelines, prior to 2023 amendments, only included a policy statement applicable to motions filed by the Director of the Bureau of Prisons, and the extraordinary and compelling reasons in that policy statement were limited to medical conditions, age of the defendant, family circumstances and "other reasons." U.S.S.G. § 1B1.13 (2021).

A defendant seeking compassionate release bears the burden of demonstrating "extraordinary and compelling" circumstances. United States v. Melvin, No. 23-6011, 2023 WL 5974872, at *2 (4th Cir. Sept. 14, 2023). If the defendant meets their burden and establishes that extraordinary and compelling circumstances exist, the Court must then consider the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) to determine how much of a reduction (if any) is appropriate. United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022). While some of the § 3553(a) factors may also be relevant to the extraordinary and compelling inquiry, the Court "must conduct a two-step analysis" before granting relief. United States v. Centeno-Morales, 90 F.4th 274, 279 (4th Cir. 2024).

### III. DISCUSSION

Defendant advances four arguments in support of his claim that extraordinary and compelling circumstances are present: (1) Defendant's young age at the time he committed the federal offenses; (2) the impact of United States v. Booker, 543 U.S. 220 (2005) on sentencing, and the Court's purported reliance on "judge-found" facts during sentencing instead of "jury-found" facts proven beyond a reasonable doubt; (3) the large disparity between the sentence Defendant received and the one he would have received after the passage of the First Step Act; and (4) his rehabilitation during his federal incarceration.

9

### A. Defendant's Age at the Time He Committed the Virginia Robberies

As outlined above, factors other than those expressly listed in the Sentencing Guidelines can constitute an extraordinary and compelling reason for compassionate release. U.S.S.G. § 1B1.13(b)(5). To qualify under this catchall provision, the "other reasons" must, either by themselves or in combination with the circumstances enumerated in § 1B1.13(b)(1)-(4), be of a similar gravity as those already described as "extraordinary and compelling" in the Guidelines policy statement. Id. Defendant argues that his relative youth at the time he committed his federal offenses (22 years old) constitutes an "other" reason of similar gravity as those listed in the policy statement and thus supports sentence reduction. ECF No. 45, at 11.

"Nowhere does the caselaw indicate that youth alone is a sufficient basis for a sentence reduction absent some other factor that could, on its own, constitute an 'extraordinary and compelling' reason for relief." United States v. Rucker, No. 3:09cr28, 2022 WL 1184670, at *3 (W.D. Va. Apr. 21, 2022). Because the Sentencing Commission's "amended policy statement does not address youth [alone] as an extraordinary and compelling reason," and Defendant fails to establish that any of the circumstances enumerated in § 1B1.13(b)(1)-(4) apply to his situation, the Court finds that Defendant's age is not a standalone extraordinary and

compelling circumstance.  <u>United States v. McCullers</u>, 704 F. Supp. 3d 659 (E.D. Va. 2023).  It is more appropriate to address this argument in conjunction with the individualized circumstances discussion accompanying Defendant's § 1B1.13(b)(6) unusually long sentence claim, which on its own can constitute an extraordinary and compelling reason for relief, and in the Court's evaluation of the § 3553(a) sentencing factors.  <u>Rucker</u>, 2022 WL 1184670, at *3.

### B. Judge Versus Jury Found Facts

Three United States Supreme Court cases, all decided <u>after</u> Defendant was sentenced in this case, reshaped the federal sentencing landscape.  First, <u>Apprendi v. New Jersey</u> and <u>Alleyne v. United States</u> both addressed the distinction between the use of "jury-found" versus "judge-found" facts at sentencing.  The Supreme Court held in <u>Apprendi</u> that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. 466, 490 (2000).  Expanding upon this decision, in <u>Alleyne</u> the Supreme Court held that <u>Apprendi</u>'s principle "applies with equal force to the facts increasing the mandatory minimum, for a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." <u>Alleyne</u>, 570 U.S. 99, 99 (2013).

Second, in <u>United States v. Booker</u>, the Court addressed a challenge to the then-mandatory sentencing scheme that generally

required judges to impose a sentence within the Guideline range. United States v. Booker, 543 U.S. 220, 221 (2005). The Supreme Court found that applying the Guidelines as mandatory violated the Sixth Amendment, and to remedy this, the Court rendered the Guidelines "effectively advisory." Id. at 245. Therefore, post-Booker, federal judges must still "consider Guidelines ranges," as part of the sentencing calculus, but the court is permitted to "tailor the sentence in light of other statutory concerns." Id.

Here, the Government argues that Apprendi and Booker[4] are not applicable to Defendant's case and that Defendant's arguments relying on these cases are based on a misunderstanding of their holdings. The Court agrees as to Apprendi, but finds that Booker is relevant to Defendant's compassionate release motion.

Beginning with Defendant's Apprendi and Alleyne arguments, Defendant claims that he should not be subjected to the "mandatory enhancements" associated with § 924(c) charges because the facts that were used to find him guilty were "'judge-found' facts [determined] at sentencing." ECF No. 45, at 4. Although Apprendi and Alleyne are defense-favorable changes in the law, Defendant fails to identify what "judge-found facts" were purportedly used to increase the statutory minimums or maximums applicable in this case. In fact, Defendant was sentenced to the exact prescribed

---

[4] The Government does not mention Alleyne in their response.

12

mandatory minimums for § 924(c) violations at that time.  Defendant was sentenced to a mandatory minimum of 5 years for his first § 924(c) offense and 20 consecutive years for each of his remaining two § 924(c) offenses.[5]  ECF No. 1, at 3.  Defendant's last two § 924(c) convictions required 20-year sentences not because they were based on "judge-found" facts, but instead because they were additional violations of the same statute.  Therefore, Defendant's Apprendi and Alleyne arguments plainly fail.

Defendant separately argues that in light of Booker he should not have been sentenced "above the mandatory guidelines which was 120-150 months," indicating that his sentence was "dictated by an unconstitutional sentencing scheme" that is no longer in use.  ECF No. 45, at 1, 3.  While Defendant is incorrect in asserting that he received a sentence above the Guideline range (he received 120 months on all counts to which the 120-150 month range applied), he is correct in asserting that he was sentenced under an unconstitutional sentencing scheme rejected by Booker.

To be sure, Defendant's sentencing judge possessed very little discretion because unless a Guideline "departure" provision was applicable, the judge was required to impose a sentence of no less than 120 months on the robbery counts.  This means that even

---

[5] Defendant was originally sentenced for a third § 924(c) offense carrying a 20 year minimum; however, upon motion of the Government, this conviction was vacated.  ECF No. 1, at 6.  Defendant's current sentence on his § 924(c) convictions is therefore 45 years (5 years + 20 years + 20 years).

though Defendant was facing a mandatory minimum of 65 years on the original four § 924(c) charges, the judge had no real ability to consider Defendant's youth, his family background, his mental health, or any other mitigating factor in support of a sentence less than 120 months on these charges. In contrast, a judge today would have broad discretion to reduce the sentence on the robbery counts based on both the length of the § 924(c) sentence and the other case-specific mitigating factors. Dean v. United States, 581 U.S. 62, 71 (2017) (holding that "nothing prevents a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense").

Although Booker is relevant to Defendant's motion, § 1B1.13(c) of the compassionate release policy statement states that non-retroactive changes in sentencing law may only constitute an "extraordinary and compelling" reason for a sentence reduction if the requirements of §1B1.13(b)(6) are met. See United States v. Browning, No. CR 2:98-134, 2022 WL 1787133, at *6 n.7 (S.D.W. Va. June 1, 2022) (identifying Booker as non-retroactive and discussing its relevancy to compassionate release motions under the standard applicable before § 1B1.13(b)(6) was adopted); see also United States v. Johnson, No. 1:97cr314, 2023 WL 5049267, at *6 (E.D. Va. Aug. 8, 2023) (holding that, under the pre-2023 standard, there was "little jurisprudential reason not to consider Booker in determining whether extraordinary and compelling reasons

14

exist"). Therefore, while <u>Booker</u> does not alone create an extraordinary and compelling reason for relief, it is a relevant and material change to sentencing policy, and an argument that Defendant did not raise in his first compassionate release motion. Accordingly, the Court will evaluate this argument in conjunction with Defendant's § 1B1.13(b)(6) claim that the First Step Act's changes to the § 924(c) stacking rule constitutes and extraordinary and compelling basis for a sentence reduction.

### C. Effect of Evolving Sentencing Law on Defendant's Sentence

There has been a "tremendous shift in the [sentencing] legal landscape" between April of 2022, when this Court denied Defendant's first compassionate release motion, and today. <u>Davis</u>, 99 F.4th at 661 (discussing the "tremendous shift" between August of 2021 and April of 2024). Most notably, the fact that a change of law that has not been made retroactive can be considered in a motion for compassionate release is now enshrined in § 1B1.13 (b)(6). Moreover, the Fourth Circuit has stated that the 2023 changes to the Guideline policy statement "serve to confirm <u>and amplify</u>" its prior ruling that "nonretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence." <u>Davis</u>, 99 F.4th at 658 (emphasis added). This Court, therefore, engages in a thorough consideration of Defendant's

pending motion without regard to the fact that it denied compassionate release prior to this shift in the legal landscape.

As determined by the Sentencing Commission, an "unusually long sentence" can be an extraordinary and compelling circumstance justifying compassionate release. U.S.S.G. § 1B1.13(b)(6). A defendant is eligible for a sentence reduction under § 1B1.13(b)(6) if able to demonstrate: "(1) the defendant received an 'unusually long sentence;' (2) a change in the law has produced a 'gross disparity between the sentence being served and the sentence likely to be imposed' at the time of the motion's filing; (3) the defendant has 'served at least ten years of the term of imprisonment;' and (4) 'full consideration of the defendant's individualized circumstances' support a finding of extraordinary and compelling circumstances." United States v. Cruse, No. 3:12cr146, 2024 WL 3257142, at *3 (W.D.N.C. July 1, 2024) (quoting U.S.S.G. § 1B1.13 (b)(6)).

Because Defendant has served more than 10 years of his federal term of imprisonment, and his 55-year sentence is surely "unusually long,"[6] the determination of whether Defendant satisfies

---

[6] Unsurprisingly, multiple district courts have held that sentences equal to or shorter than Defendant's 660-month sentence are "unusually long." See, e.g., United States v. Ware, 720 F. Supp. 3d 1351, 1362 (N.D. Ga. 2024) (finding that a 660 month sentence for three armed bank robberies was an unusually long sentence.); United States v. Brooks, 717 F. Supp. 3d 1087, 1094-97 (N.D. Okla. 2024) (holding that a 435 month sentence could be considered unusually long); United States v. Evans, No. 93-00123-CR, 2024 WL 5080545, at *9 (S.D. Fla. Dec. 10, 2024) (explaining that a 595 month term of imprisonment was unusually long).

§ 1B1.13(b)(6) turns on whether: (1) there is a "gross disparity" between the sentence Defendant is currently serving and the sentence he would likely receive today; and (2) a full evaluation of Defendant's individualized circumstances. <u>Cruse</u>, 2024 WL 3257142, at *3.

### 1. Gross Disparity

The Guidelines do not define "gross disparity" in the text of the 2023 policy statement or in the application notes that follow. Accordingly, some federal district courts have turned to dictionary definitions as a guide to determine the contours of this term. <u>See</u> <u>United States v. Allen</u>, 717 F. Supp. 3d 1308, 1316 (N.D. Ga. 2024) (recognizing that "the dictionary definition of 'gross' is 'glaringly noticeable'"); <u>United States v. Rogers</u>, No. 5:12cr29, 2024 WL 3046477, at *2 (M.D. Fla. June 18, 2024) (noting that Black's Law Dictionary defines gross as "conspicuous by reason of size or other attention-getting qualities").

In <u>United States v. Brown</u>, decided after Defendant's previous motion for compassionate release, the Fourth Circuit held that 20 years is a "clear gross disparity" and such a disparity was "unfair and unnecessary." 78 F.4th 122, 131 (4th Cir. 2023); <u>see also</u> <u>United States v. Fennell</u>, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (holding that a ten year difference in sentence constituted a gross disparity). In contrast to Defendant's unusually long 45-year sentence on his § 924(c) counts, if Defendant was sentenced today,

he would be subject to a mandatory minimum term of imprisonment between 15 and 21 years on his § 924(c) charges.[7]    U.S.S.G. § 4B1.1(c)(3); ECF No. 104, at 2.  Without even having to speculate what term of imprisonment a court would impose today on the bank robbery offenses, the likely 24 to 30 year disparity on Defendant's § 924(c) charges alone (45 years versus 15 to 21 years) is a "gross disparity."

### 2. Individualized Circumstances

Since there is no "bright line rule or formulaic approach to determine what 'disparity' between sentences must exist to be considered extraordinary and compelling, [] courts . . . . look to a defendant's individualized circumstances."  Cruse, 2024 WL 3257142, at *3.  The evaluation of a defendant's individualized circumstances largely informs the Court's ultimate decision as to whether relief is warranted under § 1B1.13(b)(6).

Even before the enactment of the 2023 Guideline Amendments, the Fourth Circuit recognized the importance of evaluating a defendant's individualized circumstances when considering a motion for compassionate release.  United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).  McCoy involved multiple defendants who were

---

[7] This range results from the differing punishments applicable to possessing a firearm during a bank robbery versus brandishing a firearm.  Three possession convictions carrying a mandatory minimum of 5 years each would result in a sentence of 15 years, whereas three brandishing convictions carrying a mandatory minimum of 7 years each would result in a sentence of 21 years.

"convicted of robberies and accompanying firearms violations under 18 U.S.C. § 924(c)." Id. at 274. The defendants' compassionate release motions were granted and, even though there was no applicable Guideline policy statement, the Fourth Circuit held that it was appropriate for the district court to consider both the "changes to § 924(c)" and the "individualized" facts of the defendant's cases. Id. When assessing the McCoy defendants' compassionate release motions, the Fourth Circuit focused on several specific individualized circumstances: (1) "relative youth" when the offenses were committed; (2) lack of criminal history, (3) the time in prison already served; (4) whether the § 924(c) mandatory minimum sentences composed the "lion's share" of the defendant's sentence; and (5) post-sentencing rehabilitation. 981 F.3d at 277-79, 286. Although such discretionary factors were not prerequisites and their consideration is not required under § 1B1.13(b)(6), they provide helpful guidance when evaluating whether Defendant's unusually long § 924(c) sentences constitute an extraordinary and compelling reason for relief. Id. at 284.

### a. Defendant's Youth

As discussed above, Defendant's relative youth at the time he committed his offenses is alone insufficient to give rise to an extraordinary and compelling circumstance; however, it is certainly something the Court considers when evaluating

Defendant's individualized circumstances. This is true even in the face of the Government's argument that Defendant's age is not a compelling post-sentencing development because it was known at the time he was sentenced by another judge of this Court. ECF No. 50, at 8. Importantly, the Government overlooks the fact that there have been significant advancements in developmental science, and courts' recognition of these developments, in the intervening decades between Defendant's sentencing (in 1991) and today (2025). United States v. Golding, No. 05cr538, 2022 WL 2985014, at *2 (S.D.N.Y. July 27, 2022); see also U.S.S.G. § 1B1.13(e) ("[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction. . . .").

To provide an example, the Supreme Court recently held that "youth matters in sentencing." Jones v. Mississippi, 593 U.S. 98, 105 (2021). More specifically, the Supreme Court has drawn on "recent developments in neuroscience, psychology, and sociology, to demonstrate why standard penological goals apply with less force to younger defendants [because of] their immaturity, susceptibility to peer and other influence, salvageability, dependence on family, and other features of their environment"

that are beyond their control. Golding, 2022 WL 2985014, at *2;
see also Miller v. Alabama, 567 U.S. 460, 472 (2012) (finding that
"the distinctive attributes of youth diminish the penological
justifications for imposing the harshest sentences on juvenile
offenders, even when they commit terrible crimes"). Furthermore,
district courts across the country have explained how these
distinctive features and the developing understanding of their
role in younger offenders' crimes can contribute to finding
extraordinary and compelling circumstances that warrant a sentence
reduction. Golding, 2022 WL 2985014, at *2; United States v.
Ramsay, 538 F. Supp. 3d 407, 417-23 (S.D.N.Y. 2021).

Because Defendant was sentenced prior to Booker, age is a
factor that would have had minimal (if any) influence on the
original sentence imposed due to the mandatory nature of the
Guidelines. Today, however, it is recognized that "[c]ourts cannot
simply treat anyone over 18 as an adult for sentencing purposes
but must inquire whether the human-being they are about to sentence
is still in many respects an adolescent." Ramsay, 538 F. Supp. 3d
at 423. As such, some courts have found that defendants in their
mid-twenties are still effectively adolescents. See United States
v. Rengifo, 569 F. Supp. 3d 180, 194 (S.D.N.Y. 2021) (considering
youth in sentencing for a defendant who was 23 years old at the
time of his offense); McCoy, 981 F.3d at 277-79, 286 (noting that
one of the defendant's relative youth, 24 years old at the time of

21

the offense, weighed in favor of a sentence reduction).  Although
Defendant was 22 years old when he committed the instant offenses,
his immaturity may still have played a critical role in his
commission of the Virginia robberies.

Briefly reviewing the record for facts that speak to
Defendant's maturity, as set forth in Defendant's Presentence
Investigation Report ("PSR"), at age 10 Defendant abruptly
discovered that the man whom he considered to be his father was
not his biological father.  ECF No. 5, at 10.  This is when
Defendant's numerous behavioral and mental health problems
allegedly began.  Id.  Defendant was admitted to a hospital for
mental health treatment for the first time at age fourteen.  Id.
at 13.  During this hospitalization, Defendant's doctor wanted
Defendant and his family to participate in therapy together, but
Defendant's parents declined to participate.  Id.  Instead,
Defendant was discharged from the facility early in his treatment
and a doctor noted that Defendant was not at the facility long
enough to make any therapeutic gains and therefore had a poor
prognosis.  Id.

Defendant was brought back to a mental health facility at the
age of fifteen for a mental health evaluation.  Id.  Defendant's
treating doctor noted that Defendant's family situation was
chaotic and unstable.  Id. at 14.  At the doctor's recommendation,
Defendant then participated in an adolescent day treatment program

22

for about eight weeks, however, he was later excused from the program due to repeated absences. <u>Id.</u> The doctor suggested that his absences were caused, in part, by a lack of family support. <u>Id.</u>

After being discharged from this day program, Defendant was soon after admitted to the hospital on a "dire admittance" and was placed in an inpatient unit. <u>Id.</u> During this inpatient stay, Defendant was diagnosed with borderline psychosis evidenced by mild to moderate reality distortions. <u>Id.</u> Defendant's doctors noted that this caused Defendant to be particularly vulnerable to stress and likely to overreact. <u>Id.</u> Because of his propensity to act on reality distortions, doctors noted that Defendant could be a danger to himself or others. <u>Id.</u>

Defendant, without proper mental health treatment, was arrested shortly after this last inpatient stay and was charged with his first robbery at age sixteen. <u>Id.</u> at 10. Defendant was sentenced to four years imprisonment and spent some of his formative adolescent years incarcerated. <u>Id.</u> The fact that Defendant was not receiving the mental health treatment multiple doctors recommended and spent close to half of his teenage years in prison surely impacted the course of Defendant's development. <u>Ramsay</u>, 538 F. Supp. 3d at 417-22; <u>see</u> <u>United States v. Chachanko</u>, No. 5:06cr50117, 2024 WL 3293619, at *10 (D.S.D. July 2, 2024).

23

### b. Defendant's Criminal History

In contrast to the picture the Government endeavors to paint, Defendant's criminal history prior to the string of robberies he committed in Indiana and Virginia was almost nonexistent. The Government states that Defendant "was not your typical 23-year-old" at his initial sentencing, for he had a Criminal History Category of V and had been convicted of three prior bank robberies. ECF No. 50, at 9. Although Defendant had a Criminal History Category V, and it is true that he had committed prior robberies, this characterization misrepresents the extent of Defendant's criminal "history."[8]

To begin, all the crimes for which Defendant has been continuously incarcerated for three and a half decades took place over a very short period of time. Id. Even after one of his § 924(c) convictions was vacated, Defendant was sentenced to serve a collective 88 years in state and federal prison for crimes that all occurred across six months when he was only 22 years old. Id. Notably, these crimes occurred so close together that Defendant never had the opportunity to rehabilitate in between his Indiana and Virginia robberies, in prison or otherwise. As a result of these consecutive convictions carrying consecutive sentences,

---

[8] The robberies Defendant committed in Indiana occurred after his Virginia robberies, and therefore, Defendant's only significant criminal "history" at the time he robbed the Virginia banks is the robbery he committed at age 16. ECF No. 5, at 8.

Defendant, at age 57, has only been free from incarceration for approximately two years of his adult life. Id. So, although Defendant's criminal history is serious, the Court cannot effectively assess Defendant's likelihood of reoffending based on crimes he committed over a 6-month period, 35 years ago. The Court finds that Defendant's youth and short period of time over which his crimes were committed mitigates to some extent the seriousness of Defendant's criminal history and does not categorically undermine any potential finding of an extraordinary and compelling circumstance.

### c. Defendant's Length of Sentence Already Served

As of the date of this opinion, factoring in good time credit, Defendant has likely served over 17 years of his federal term of incarceration. This means that Defendant has served the entirety of his sentence corresponding to the bank robbery charges (120 months), as well as the corresponding sentence for one of his three § 924(c) charges (60 months). ECF No. 1, at 3. This is approximately 30% of Defendant's sentence. While this is nowhere near the majority of Defendant's unusually long sentence, a sentence imposed in a manner that has since been rejected by Congress and the Supreme Court,[9] it is still a significant period of incarceration. Moreover, Defendant has been continuously

---

[9] The Court is referencing the post-Booker changes to the Guidelines that made them advisory as well as Congress' changes to § 924(c)'s mandatory minimum sentences and what qualifies as a second or subsequent offense.

incarcerated for 35 years, and during the latter part of these three-and-a-half decades, he made significant strides toward rehabilitation. In combination with the other individualized circumstance factors, the lengthy sentence Defendant has already served, and his even lengthier period of incapacitation, supports this Court's finding of an extraordinary and compelling reason for compassionate release.

### d. "Lion's Share" of Defendant's Sentence

The next factor, which is related to the unusual length of a sentence, considers whether the change in sentencing law impacts the "lion's share" of a defendant's sentence. Here, 82% of Defendant's sentence (540 out of 660 months) is based on his "stacked" § 924(c) convictions. ECF No. 1, at 3. Thus, the § 924(c) sentences unequivocally make up the lion's share of Defendant's sentence.

As this Court stated in response to Defendant's prior compassionate release motion, Defendant's 45-year consecutive sentence on his § 924(c) charges exemplifies both the "sheer and unusual length" of "stacked" § 924(c) sentences before Congress modified the statute and the "gross disparity" between those sentences and § 924(c) sentences imposed today. Crenshaw, 2022 WL 1046371, at *4; McCoy, 981 F.3d at 285. Even though the recent changes to § 924(c) were not made retroactive, as discussed at length above, the Court has express authority to consider them as

26

part of the extraordinary and compelling calculus. <u>Dire</u>, 2024 WL 4259871, at *3; U.S.S.G. § 1B1.13(b)(6). Illustratively, district courts have granted compassionate release in other similar cases. <u>See, e.g.</u>, <u>United States v. Donato</u>, No. 95cr223, 2024 WL 1513646, at *7 (E.D.N.Y. Apr. 8, 2024) (granting compassionate release because the defendant's "stacked" § 924(c) sentence was 65 years longer than what he would receive after the passage of the First Step Act); <u>United States v. Ogun</u>, 657 F. Supp. 3d 798, 812 (E.D. Va. Feb. 24, 2023) (finding that the disparity between the defendant's "stacked" § 924(c) sentences and the § 924(c) sentence he would have received in 2023 supported compassionate release). When the Court considers these changes to § 924(c) as a part of the extraordinary and compelling calculus, this individualized circumstance undoubtedly supports the conclusion that an extraordinary and compelling reason for sentence reduction is present.

### e. Defendant's Post-Sentencing Rehabilitation[10]

As highlighted by the Government, the Court examined Defendant's rehabilitation in response to Defendant's last motion for compassionate release and found it largely uncompelling. <u>Crenshaw</u>, 2022 WL 1046371, at *5. However, the Court disagrees

---

[10] As previously explained, rehabilitation alone is not an extraordinary and compelling circumstance, but it is appropriate to assess this factor as a component of Defendant's § 1B1.13(b)(6) argument.

with the Government's suggestion that the updated record necessarily supports the same conclusion. ECF No. 50, at 11-12. First, as this Court previously noted, Defendant's prison infractions have declined as he has aged, and his behavior in federal prison has been notably better than his time in Indiana state prison. Though Defendant has had a total of five federal infractions, three of which are very serious, all these infractions occurred during his first 6 years in federal prison, meaning that Defendant has now had zero infractions during the <u>last nine years</u> (his last infraction was in February of 2016). ECF No. 50-1. Furthermore, during the last few years, Defendant has participated in the BOP "Challenge Program" and also claims to have completed the BOP "Threshold Program."[11] ECF No. 51, at 7-8; ECF No. 51-1, at 8-10.

The Challenge Program is a cognitive-behavioral, residential treatment program where inmates participate in interactive groups and attend community meetings while living in a housing unit separate from the general population. <u>See</u> United States Department of Justice, <u>First Step Act Approved Programs Guide</u>, pg. 9 (October

---

[11] Defendant does not appear to present any exhibits indicating that he participated in or completed the "Threshold Program," which is a six month long faith-based reentry program. <u>See</u> United States Department of Justice, <u>First Step Act Approved Programs Guide</u>, pg. 32 (October 2020); ECF No. 51, at 17. However, Defendant's BOP records do indicate that he started a "Re-entry Class" in April of 2024, though no further details are provided. ECF No. 45-1, at 8.

2020). As the psychologist overseeing the Challenge Program at Defendant's facility noted, Defendant "participate[d] well in his process group and [gave] good feedback," and "gained more self-awareness" while "establishing and maintaining healthy relationships with his peers." ECF No. 45-1, at 4. Defendant participated in the Challenge Program for over 6 months and alleges that he only stopped participating because an opportunity arose for transfer to a lower security facility.[12] ECF No. 51, at 8.

Defendant's recent participation in these programs to better himself, including additional "ACE" programs not discussed here, despite being subjected to what is effectively a life sentence (he is currently scheduled to be released at age 90), reflects well on Defendant's rehabilitative growth and intrinsic motivation. See United States v. Wiley, No. 2:10cr456, 2024 WL 3992325, at *2 (D. Nev. Aug. 29, 2024).

Accordingly, the Court finds that Defendant's rehabilitation and lack of disciplinary infractions over the past 9 years, in the face of being housed in a high security prison with limited prospects of release, are a better gauge of Defendant's current characteristics than his conduct over a 6-month period 35 years ago. The rehabilitation evidence Defendant provides further illustrates an important premise on which federal courts have

---

[12] Defendant is still incarcerated at USP Coleman, a high security facility, and the Court does not have any further information about Defendant's potential transfer to a lower security facility.

increasingly relied: "young offenders' worst actions do not necessarily demonstrate incorrigibility or predict their continuing misconduct." Ramsay, 538 F. Supp. 3d at 422; Golding, 2022 WL 2985014, at *3.

*   *   *

Overall, Defendant's individualized circumstances, evaluated with guidance from McCoy, and in conjunction with the gross disparity in this case, support the finding of an extraordinary and compelling circumstance. Therefore, the Court finds that all the requirements of § 1B1.1(b)(6) have been met, and that Defendant has satisfied his burden of establishing that his unusually long sentence is an extraordinary and compelling reason that warrants a sentence reduction.

### D. Section 3553 Factors

A sentence reduction is appropriate under § 3582(c)(1)(A) only if a defendant both establishes an extraordinary and compelling circumstance and demonstrates that the § 3553(a) statutory sentencing factors support a reduction. The § 3553(a) factors include:

> (1) [the] offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely, (a) just punishment (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.

*Rita v. United States*, 551 U.S. 338, 347-48 (2007) (internal quotation marks omitted). Because Defendant has met his burden and established that his unusually long sentence is an extraordinary and compelling reason for his compassionate release under U.S.S.G. § 1B1.13(b)(6), the Court next examines the § 3553(a) statutory sentencing factors to determine whether they support a sentence reduction, and if so, how much of a reduction.[13]

### 1. Offense and Offender Characteristics

To begin, the Court acknowledges the facts of Defendant's six bank robberies in Virgina. At least three of these robberies occurred while Defendant was armed, and several others involved threats to kill if he did not receive money. ECF No. 5, at 4-6.[14] Defendant was convicted three separate times for armed robbery over the span of seven years, but his later two convictions occurred almost simultaneously and did not provide Defendant with an intervening opportunity to reform his conduct. *Id.* at 8-9.

---

[13] The Court is not required to exhaustively analyze each § 3553(a) factor, and a district court's explanation need only be sufficient to "satisfy the appellate court that the district court has considered the parties' arguments and has a reasoned basis for exercising its own [] authority." *United States v. Friend*, 2 F.4th 369, 379 (4th Cir. 2021).

[14] These threats surely placed the victims in great fear for their personal safety, as all the bank tellers testified at Defendant's trial. *See generally* Transcript of Proceedings January 2, 1991 and January 3, 1991, Eastern District of Virginia. While oral and written threats were made, and a firearm was displayed at certain robberies, Defendant <u>did not physically harm anyone</u> during the robberies, nor did he point his gun at any teller or other victim. *Id.*

Without downplaying the seriousness of Defendant's crimes, the Supreme Court and the Sentencing Commission have recognized that both age and lack of guidance as a youth are factors that may be considered under § 3553(a). Rita, 551 U.S. at 364-65 (Stevens, J., concurring). In fact, in 2024, the Sentencing Commission amended the Policy Statement on Age, § 5H1.1, to state that age can be relevant in determining whether a downward departure is warranted, particularly when the defendant was youthful at the time they committed the offense or prior offenses.[15] Section 5H1.1 recognizes modern advances in developmental science and the justice system's evolved understanding of such developments. Specifically, the Sentencing Commission now recognizes that "[c]ertain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships." U.S.S.G. § 5H1.1. Although not in the context of § 5H1.1, this Court has discussed at length how Defendant's "environment, adverse childhood experiences, [] and

---

[15] Although amendments to the Guidelines Manual that have not been made retroactive, like the 2024 amendments to § 5H1.1, shall not be considered in the extraordinary and compelling calculus, "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under th[e] policy statement," an amendment to the Guidelines Manual that has not been made retroactive, "may be considered for purposes of determining the extent of any such reduction." § 1B1.13(c). Therefore, the Court may appropriately consider the recent updates to § 5H1.1 here.

familial relationships" prior to his incarceration affected him. Balancing the nature of the offenses and Defendant's characteristics, to include his immaturity and apparent mental health issues as a young man, the Court finds the offense and offender characteristics factor to be largely neutral, neither weighing in favor nor against sentence reduction.

### 2. Basic Aims of Sentencing

#### a. Just Punishment and Avoiding Unwarranted Disparities

The Court also must consider the need for Defendant's sentence to reflect the basic aims of sentencing: just punishment, deterrence, incapacitation, and rehabilitation. Beginning with just punishment, as Defendant notes, he is serving significantly more time on his federal charges than at least some individuals convicted of murder. ECF No. 45, at 7; see United States v. Haynes, No. 4:96cr40034, 2021 WL 406595, at *6-7 (C.D. Ill. Feb. 5, 2021) (finding that the defendant's sentence should be reduced in part because of the massive disparity between his sentence and "the national average sentence for murder . . . 21 years" because "[w]hile Defendant's multiple armed robbery crimes were undeniably serious, the Court doubts any reasonable person would suggest they are deserving of a sentence 5 times the length of the average sentence for murder"). The Fourth Circuit found this sort of argument compelling in Brown, where the Court decided that they could "not ignore the extraordinary fact" that the defendant in

that case, "who was not charged with causing any physical violence or injury" was serving a sentence significantly longer than some murderers.   78 F.4th at 131.   Defendant's case is comparable to Brown, as there is no evidence that Defendant physically harmed anyone or even pointed a gun at any of the victims of his federal robberies.

While the Government points out that many other prolific armed robbers' motions for compassionate release have been denied even though they are serving sentences like Defendant's, the Government overlooks the differences between those cases and the instant one.   As just one illustrative example, in United States v. King, the defendant committed eight armed robberies during which he terrorized bank employees by binding them with flex cuffs or plastic tape, striking and kicking them, and requiring some of them to disrobe.   No. 3:01cr210, 2024 WL 761894, at *3 (W.D.N.C. Feb. 21, 2024).   Although the Defendant in this case plainly scared his victims, his conduct failed to rise to anywhere near the level of violence or humiliation found in King.

Moreover, Defendant received 540 months on his § 924(c) charges alone, a sentence that Congress has since recognized as excessive, which illustrates "how severe sentencing mandates can create outcomes wholly divorced from our notions of justice." Haynes, 2021 WL 406595, at *6-7.   Considering the demand for just punishment, but emphasizing the need to avoid sentencing

34

disparities, the Court finds that this factor significantly favors a sentence reduction.

### b. Incapacitation

Defendant has received three different punishments for three different sets of crimes resulting in his incarceration and incapacitation for the past 34 years (38 years total). Defendant has spent his entire adult life, save approximately two years, incarcerated. Furthermore, Defendant is currently 57 years old, and in an age bracket in which the chance of recidivism declines markedly and with it the justification for continued incapacitation. Recidivism & Federal Sentencing Policy, U.S. Sentencing Comm'n, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/RG-recidivism__overview.pdf; see also U.S.S.G. § 5H1.1 (the age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age). Notably, even under the Guidelines sentence applicable to Defendant today, Defendant would be unlikely to be released until he is approximately 70 years old. Thus, the record does not paint a picture, in the Court's eyes, of an individual that must be incapacitated for another 40 years to keep the public safe. Keeping Defendant incapacitated until the age of 90, as his current sentence would, is unnecessary and therefore another factor that significantly favors a sentence reduction.

### c. Deterrence

Having experienced life in prison for the past 34 years, Defendant states that he never wants to go back to prison and that he is sufficiently deterred from committing any further crimes. ECF No. 45, at 12. Defendant reports his desire to be present for his children and grandchildren and witness their accomplishments. Id. The Court can think of few deterrents greater than being in prison from your early 20s until age 70 (or older) and missing your children and grandchildren's every milestone because of crimes you committed at a youthful age before your brain fully matured. Graham v. Fla., 560 U.S. 48, 68 (2010); U.S.S.G. § 5H1.1. Moreover, if released, Defendant will serve a term of supervised release of five years and will have to report to a United States Probation Officer. ECF No. 1, at 3. This offers additional deterrence and incentive for Defendant to refrain from further criminal conduct. See United States v. Jones, No. 7:97cr51, 2021 WL 5236873, at *7 (W.D. Va. Nov. 8, 2021). In sum, there is no logical deterrence-based argument for not reducing Defendant's sentence.

### d. Rehabilitation

The next § 3553(a) factor directly relevant to the Court's calculus is rehabilitation. Rehabilitation is an area that Defendant has made significant strides in over the past nine years, including the years since his last motion for compassionate

36

release.    As    previously    stated,    Defendant's    efforts    to
rehabilitate himself while serving what is practically a life
sentence    reflects    well    on    his    personal    characteristics,
specifically his intrinsic motivation and optimism.  Defendant has
earned his GED, refrained from using drugs, has had no disciplinary
infractions in the past 9 years,[16] logged more than 1,200 hours of
prison programming, and participated in the Challenge Program for
a period of six months.  ECF No. 45-1, at 4-6, 8, 11; ECF No. 51,
at 17.

Relevant    to    the    rehabilitation,    incapacitation,    and
deterrence evaluations, Defendant has also provided evidence of
support upon his release, which courts have recognized reduces the
likelihood of reoffending.   See Chachanko, 2024 WL 3293619, at
*11; U.S.S.G. § 5H1.1 ("Age-appropriate interventions and other
protective    factors    may    promote    desistance    from    crime.").
Specifically, Defendant has been in contact with the Mumineen
Community Development Center in the City of Indianapolis, which is

---

[16] The Court recognizes that Defendant has had multiple serious disciplinary
infractions during the early portion of his federal term of incarceration.
These infractions included fighting with another inmate and possession of
a dangerous weapon three separate times.  ECF No. 45-1, at 11.  Defendant
offers mitigating explanations for these infractions, id., but the conduct
is still concerning.  Defendant also had a litany of disciplinary violations
during his 20 years in state prison, including assaulting another inmate,
using controlled substances, assaulting a prison employee, and starting a
riot.  See ECF No. 37-1, at 12, 60, 142, 155, 165, 262, 515.  The Court
recognizes the gravity of all these violations but notes that none of these
disciplinary infractions have occurred in the past nine years, with some
dating back multiple decades. Recently, Defendant has shown a significant
improvement in his behavior.  ECF No. 45-1, at 11.

a nonprofit mosque-based, faith-centered community development organization that aids individuals transitioning from incarceration back into the community. ECF No. 45-1, at 7. Defendant also has presented the Court with an offer of employment at a lawn-care and snow removal business owned by a family friend in Indianapolis. ECF No. 52, at 2. Additionally, Defendant provides the Court with letters from three fellow inmates explaining that Defendant helps mentor young inmates by teaching them the importance of rational thinking and positive decision making, using his life as a cautionary tale. ECF No. 51-1, at 2-6. Overall, the Court finds that Defendant's current sentence is "neither necessary to deter others from similar criminal activity nor 'to protect the public from further crimes of the defendant.'" Brown, 78 F.4th at 132 (quoting 18 U.S.C. § 3553(a)(2)).

### 3. Sentencing Guidelines and Sentencing Commission Policy Statements

Finally, as discussed at length above, the Sentencing Guidelines and Sentencing Commission Policy Statements both favor relief from unusually long sentences, particularly when Congress has deemed the sentencing scheme that led to the sentence as "unnecessary and unfair." McCoy, 981 F.3d at 285. The criteria set forth by the Sentencing Commission in U.S.S.G. § 1B1.13(b)(6) are met by Defendant, and when determining how great of a reduction to impose, age is now an important consideration as laid out in

U.S.S.G. § 5H1.1.  In conclusion, the Court has considered all of the § 3553(a) factors and finds that they support a reasonable reduction to Defendant's sentence.[17]

\*   \*   \*

Because Defendant has established extraordinary and compelling circumstances under U.S.S.G. § 1B1.13(b)(6), and because the § 3553(a) factors also weigh in favor of a sentence reduction, the Court **GRANTS** Defendant's compassionate release motion in part.  To better approximate post-Booker sentences that defendants receive under the updated § 924(c) framework, while still recognizing the seriousness of Defendant's crimes and the fact that the changes to § 924(c) were not made retroactive, the Court finds that reducing Defendant's sentence to eliminate the now-abrogated "stacking" disparity is appropriate.  Under current law, assuming sufficient evidence to establish "brandishing" at three robberies, Defendant would likely be sentenced to 21 total years on the three § 924(c) counts (rather than 45 years), and 10 additional years on the robbery counts.  This remains a very lengthy sentence, longer than some murder sentences, but one that is consistent both with modern developments in sentencing law and Defendant's repeated commission of armed robberies.  While this Court has authority to impose a greater or a lesser reduction, it

---

[17] The Court recognizes that Defendant was ordered to pay approximately $10,000 of restitution, but this factor has little relevance to the pending motion.

finds that a sentence of this length appropriately balances all of the relevant § 3553(a) factors.

Accordingly, Defendant's term of imprisonment is hereby reduced to a **total term of 372 months**. This term consists of 120 months on each of Counts 1, 2, 3, 5, 7 and 9, all to be served concurrently. Additionally, Defendant shall serve 84 months on Count 4, 84 months on 6, and 84 months on Count 8, with these terms to be served consecutively to each other and to all other counts. All other terms of the written judgment dated April 11, 1991 remain in effect. The Court finds that such reduction effectively protects the public and promotes justice, with Defendant still having more than 10 years left to serve on his federal sentence, depending on the manner in which the BOP applies "good time" credits.

### IV. CONCLUSION

For the reasons explained above, Defendant's motion for compassionate release is **GRANTED** in part. ECF No. 45. The Clerk is **REQUESTED** to forward a copy of this Opinion and Order to Defendant and to counsel for the Government.

**IT IS SO ORDERED.**

                               /s/ _____

                                       Mark S. Davis
                     CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 26 , 2025